**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior District Judge Marcia S. Krieger**

Civil Action No. 18-cv-00070-MSK

SALLY A. MCLELLAN,

     Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

     Defendant.

---

## OPINION AND ORDER

---

**THIS MATTER** comes before the Court pursuant to the Defendant's ("SSA") Motion to Dismiss **(# 16)**, Ms. McLellan's response **(# 23)**, and the SSA's reply **(# 24)**.[1] Ms. McLellan has also filed a Motion for Leave to Supplement **(# 28)** her Complaint, to which the SSA has filed no response. Also pending are numerous motions **(# 26, 27, 29, 31, 32)** by Ms. McLellan, variously seeking appointment of counsel, an update on the status of the case, or an expedited ruling.

According to Ms. McLellan's *pro se*[2] Complaint **(# 1)**, she applied for Social Security Disability benefits in March 2007. After extended administrative proceedings, in October 2017, the SSA found Ms. McLellan eligible for benefits retroactively to July 2012. Ms. McLellan

---

[1]     Without seeking leave, Ms. McLellan filed a surreply **(# 25)**. In the interests of completeness of the record, the Court has considered that surreply.

[2]     The Court construes Ms. McLellan's *pro se* filings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

contends that she has begun receiving her monthly benefit payments, but has yet to receive any "backpay" – that is, the retroactive payments.[3]

Supplemental submissions from Ms. McLellan and filings by the SSA flesh out Ms. McLellan's claims somewhat, and the Court recites those additional facts simply for purposes of clarity and context, without actually relying on them as part of the Court's analysis. On October 13, 2017, an ALJ determined that Ms. McLellan was entitled to benefits retroactive to August 2012, totaling $30,402.90. For various reasons (including avoiding conflict with certain means-testing that applies to a claimant's entitlement to ongoing benefits), when retroactive benefit payments owed to a claimant exceed a certain amount, the SSA will not pay them out in a lump sum. Instead, the SSA makes such payments "in not more than 3 installments [ ] made at 6-month intervals," with the first two installment payments determined by a formula. 20 C.F.R. § 416.545(b). Pursuant to this rule, in March 2018, the SSA made a first installment payment to Ms. McLellan in the amount of $2, 250.

There are certain exceptions to the installment payment rule, allowing the first two installment payments to be increased above the formula-driven amount if the claimant has outstanding debts for necessities like clothing or shelter. 20 C.F.R. § 416.545(d)(1)(i). It appears that, at some point in time, Ms. McLellan requested that her installment payment be increased due to outstanding debts she owed for rent payments. She states that she "received correspondence" in late March 2018 "dismissing my request for reconsideration of my award."

---

[3]    Separately, Ms. McLellan also alleged that she twice requested that the SSA increase her monthly benefit amount in response to an increase in her rent, but that the SSA never responded to that request. The Court dismissed **(# 14)** her request for mandamus relief on this issue due to lack of subject matter jurisdiction.

It appears that SSA made the second installment payment six months later, in or about September 2018. However, rather than paying any sums to Ms. McLellan, SSA made a payment of $11,571 to the State of Colorado. This payment appears to be pursuant to 42 U.S.C. § 1383(g). That statute provides that, upon the written authorization of a claimant, the SSA may "withhold [retroactive] benefits due with respect to that individual and may pay to a State . . . an amount sufficient to reimburse the State [ ] for interim assistance furnished on behalf of the individual by the State." *See generally Johns v. Stewart*, 57 F.3d 1544 (10th Cir. 1995) (finding that such practice does not contravene the Social Security Act). According to a September 5, 2018 letter from the State of Colorado to Ms. McLellan, Ms. McLellan had previously "signed an authorization giving Social Security the authority to reimburse the State . . . for assistance given to you under the State Aid to the Needy Disabled State Only program." The State of Colorado provided Ms. McLellan a calculation of the aid payments she had received under that program between 2012 and 2017, with the total coming to $11,571.

It would appear that the third installment payment, in the final amount of $16,581.19,[4] would have been due in or about March 2019. The record before the Court does not indicate whether that payment was made, and if it was, to whom and in what amount(s).

**A. Motion to dismiss**

The SSA moves **(# 16)** to dismiss Ms. McLellan's claim, arguing that the Court's subject-matter jurisdiction extends only to "final" decisions of the agency. 42 U.S.C. § 405(g), (h). The

---

[4]     Ms. McLellan's Complaint (and other filings) requests payment of interest on the retroactive benefit amount owed to her. Claimants are not entitled to interest on retroactive benefits. *See Abulkhair v. Commissioner*, 450 Fed.Appx. 117, 119 (3d Cir. 2011).

SSA argues that determinations about when and how to pay retroactive benefits are not "final" benefits subject to judicial review. [5]

42 U.S.C. § 405(g) provides that "any individual, after any final decision of the Commissioner [ ] made after a hearing . . ., may obtain review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision." 42 U.S.C. § 405(h) provides that "no findings of fact or decision of the Commissioner [ ] shall be reviewed . . . except as herein provided." Thus, the Court's jurisdiction to hear Ms. McLellan's claim exists only to the extent that she is challenging a "final decision . . . made after a hearing."

In *Smith v. Berryhill*, 139 S.Ct. 1765, 1774 (2019), the Supreme Court sought to define what constitutes a "final decision" under the Social Security Act. It must be "final," in the sense of "terminal" – that is, "the final stage of review" under the SSA's own regulations. *Id.* It must also be "made after a hearing," in the sense that it is "tethered to" a hearing that is "a matter of legislative right rather than agency grace." *Id.* at 1775. In so holding, the *Smith* Court distinguished its case – in which the claimant sought an initial award of benefits and had a

---

[5]     The procedural basis of the SSA's motion is somewhat unclear. In the first paragraph of the motion and in footnote 1, the SSA explains that actions seeking review of a final agency decision must be brought within 60 days of the decision. It states that it construes Ms. McLellan's action to be such an untimely request for review, and thus, it considers its motion to be one to dismiss on statute of limitation grounds under Fed. R. Civ. P. 12(b)(6), not a subject-matter jurisdiction motion under Rule 12(b)(1). But in the Statement of the Case and elsewhere in its motion, the SSA argues that "this Court does not have jurisdiction over this action." Moreover, the SSA has submitted several exhibits to its motion, which would not properly be before the Court on a Rule 12(b)(6) motion but could be considered under Rule 12(b)(1).

     Ultimately, the Court need not determine whether the SSA's motion arises under Rule 12(b)(1) or 12(b)(6). For the ease of the reader, the Court has recited certain facts that fall outside of the four corners of Ms. McLellan's Complaint, but the Court has not considered those facts for purposes of its evaluation. Moreover, the Court has treated the well-pled facts alleged by Ms. McLellan's Complaint as true. In such circumstances, the Rule 12(b)(1) and 12(b)(6) analyses are not materially different.

hearing before an ALJ, only to have his appeal of the ALJ's ruling denied on timeliness grounds – from *Califano v. Sanders*, 430 U.S. 99, 108 (1977), in which the Court held that a claimant's petition to reopen a prior final decision – a petition that was denied by the SSA without a hearing – was not subject to judicial review because "the opportunity to reopen final decisions and any hearing convened to determine the propriety of such action are afforded by the Secretary's regulations and not by the Social Security Act."

It is not completely clear what rule *Smith* purports to lay down. In *Keller v. Commissioner*, 748 Fed.Appx. 192, 194 (10th Cir. 2018), the 10th Circuit seems to have read *Smith* extremely narrowly, construing it to establish that "the district court's jurisdiction is limited to reviewing the agency's final decision on an initial claim for benefits" (not, as in both *Califano* and *Keller*, a request by a claimant to reopen a prior denial of such a claim). If that is the correct reading of *Smith*, Ms. McLellan's claim challenging the SSA's decision to pay her retroactive benefits in installments is not a "final decision" because, clearly, it is not an "initial claim for benefits."

Alternatively, one might read *Smith* to teach that matters arising under statute can, if pursued to conclusion, result in a "final decision," whereas procedures that are created solely by regulation cannot. If that is the correct reading, Ms. McLellan's claim challenging the payment of her retroactive benefits via installment still fails. The Social Security Act itself has relatively little to say on how and when such payments are made. 42 U.S.C. § 404(a)(1) provides that "whenever the Commissioner [ ] finds that more or less than the correct amount of payment has been made to any person, . . . proper adjustment or recovery shall be made <u>under regulations prescribed by the Commissioner</u>." (Emphasis added.) In other words, although Congress

5

requires that an underpayment be rectified, it leaves discretion to the Commissioner to determine how and when additional payments are made.  As explained above, the Commissioner has done so in the form of the installment payment scheme described in 20 C.F.R. § 416.545(b).  That scheme does not describe any hearing procedure that claimants are entitled to if they disagree with the timing or amount of installment payments.  (Indeed, it does not even appear that the regulation confers any discretion upon the Commissioner to decide whether to make installment payments.  If the unpaid benefit amount exceeds an objectively-calculable threshold, interim payments in specifically-defined amounts are mandatory.)  Thus, the installment payment scheme is a "matter of agency grace," not a "legislative right" that entails a right to a hearing and, thereafter, judicial review under 42 U.S.C. § 405(g).  As such, the Court lacks the power to hear Ms. McLellan's challenge to the SSA's invocation of the installment payment plan for her retroactive benefits.[6]

Yet another way of reading *Smith* is that the notion of a "final decision" is tied to the exhaustion of the SSA's four-step appeal procedure.  139 S.Ct. at 1772 ("modern-day claimants must generally proceed through a four-step process before they can obtain review from a federal court").  20 C.F.R. § 416.1400 "describe[s] the process of administrative review and explain[s claimants'] right to judicial review <u>after you have taken all the necessary administrative steps</u>." (Emphasis added.)  The administrative process requires a claimant to: (i) obtain an initial determination, (ii) request reconsideration of an unfavorable determination, (iii) request a

---

[6]     The same analysis and same result would apply to the extent that Ms. McLellan can be understood to be challenging the SSA's rejection of her request for an increased first or second installment payment due to her claim of having outstanding debts for shelter or other necessities. Once again, the ability to request modifications to the installment payments are matters created by "agency grace," not statutory command.

hearing before an ALJ, and (iv) request review of the ALJ's decision by the Appeals Council. It is only "[w]hen you have completed the steps of the administrative review process" that a claimant "may request judicial review by filing an action in federal court." 20 C.F.R. § 416.1400(a)(1)-(5). To the extent that *Smith* requires complete exhaustion of the administrative review process before an determination becomes a "final decision," Ms. McLellan's Complaint does not allege that she sought and obtained an ALJ hearing or review by the Appeals Council of her objections to the SSA paying her retroactive benefits via installments. Thus, once again, the Court must conclude that Ms. McLellan's claim is not seeking review of a "final decision" under § 405(g).

Accordingly, because Ms. McLellan's Complaint does not allege facts that would suggest that her dispute over the SSA's resort to installment payments of her retroactive benefits is a "final decision" eligible for judicial review, the Court grants the SSA's motion to dismiss.

## B. Request to amend

On May 23, 2019, Ms. McClellan requested leave to amend and supplement her Complaint to add several additional contentions and claims: (i) an allegation that on March 21, 2017, the SSA "reaffirmed [its] decision to impute shelter income to the plaintiff with a 60-day appeal period"; (ii) that on March 21, 2017, Ms. McLellan "appealed [the] decision to impute shelter income to her by requesting a hearing by an ALJ"; (iii) that on September 5, 2018, the SSA paid more than $11,500 of her retroactive benefits to the State of Colorado "without lawful authority to do so"; (iv) that on January 10, 2019, the SSA "denied [Ms. McLellan] the opportunity for a hearing before an ALJ," apparently relating to the release of her back payments to the State of Colorado, "without opportunity for appeal"; (v) on April 16, 2019, the SSA

"dismissed [her] appeal regarding imputed income without a hearing before and ALJ and without opportunity for appeal"; (vi) a new claim that in November 2017, Ms. McLellan requested an increase in her monthly benefit amount due to increased renal expenses, that the SSA failed to take action on that request until May 2018, and that in January 2019 the SSA denied an apparent request by Ms. McLellan for an ALJ hearing regarding "the delay in rental increase"; and (vii) an amendment to her Prayer For Relief to include requests for declarations that: (a) she "received no shelter income as imputed to her," (b) the SSA "had no lawful authority to redirect $11,571 of [her] backpay" to the State of Colorado; (c) her "rental increase became effective December 1, 2017" instead of May 2018, and (d) "all funds payable [to her] must be paid immediately."

Fed. R. Civ. P. 15(a) provides that leave to amend a complaint should be "freely granted." But the Court may deny a request to amend if the proposed amendment is the product of undue delay or would be futile, insofar as the amended claim would nevertheless be subject to dismissal. *Hasan v. AIG Property Casualty Co.*, 935 F.3d 1092, 1101-02 (10th Cir. 2019). Some of the matters Ms. McLellan proposes to add reflect her undue delay in seeking to amend. 42 U.S.C. § 405(g) requires that a claimant seek judicial review of a final decision within 60 days of the mailing of the notice of that decision. To the extent that Ms. McLellan contends that the January 10, 2019 denial of her request for a review of the SSA's decision to divert her retroactive benefits to the State of Colorado constitutes a "final decision," her request in May 2019 to amend her complaint to assert a claim for review comes more than 60 days beyond the date of the SSA's decision. Thus, such a claim would be untimely even if the Court were otherwise inclined to permit amendment. The same is true of Ms. McLellan's proposed new claim attacking the SSA's January 2019 decision denying her request for a retroactive rental increase.

Moreover, all of Ms. McLellan's proposed new allegations or new claims would be futile for the same reasons discussed above: they are not "final decisions" subject to judicial review under § 405(g). The grant or denial of rental increases or the imputation of rental income to her are not initial applications for benefits, and thus, they would not be subject to judicial review under the test in *Keller*. Most are matters considered under agency regulations, not statutory rights, and thus, would appear to fall outside the scope of judicial review according to a fair reading of *Smith*.

At most, only Ms. McLellan's challenge to the SSA's diversion of a substantial portion of her back benefits to the State of Colorado derives from a statutory source (a source with which Ms. McLellan might not be familiar), but even a claim premised upon that diversion of funds would be futile. As noted above, the Social Security Act authorizes the SSA to divert a claimant's retroactive benefits to a state as recoupment of state-supplied benefits if the claimant has given written authorization to do so. 42 U.S.C. § 1383(g). Ms. McLellan's proposed amended complaint does not allege that she <u>did not</u> give such written authorization. To the contrary, she attaches a letter from the State of Colorado that seems to explain that she <u>did</u> give such an authorization, as such an authorization is required of all potential claimants who apply for benefits from the state under that program. Thus, any putative claim by Ms. McLellan that purports to challenge the diversion of her benefits to the State of Colorado is futile because she has not alleged any facts showing that the SSA acted inconsistently with the statutory language. Accordingly, the Court denies Ms. McLellan's request to amend as futile.

For the foregoing reasons, the SSA's Motion to Dismiss **(# 16)** is **GRANTED**, and Ms. McLellan's remaining claims in this action are **DISMISSED**. Ms. McLellan's Motion For

Leave to Amend **(# 28)** her Complaint is **DENIED**.  Ms. McLellan's remaining motions **(# 26, 27, 29, 31, 32)** seeking appointment of counsel, expedition of the case, or a report on the case status are denied as moot.

Dated this 22nd day of December, 2019.

BY THE COURT:

Marcia S. Krieger
Senior United States District Judge